```
UNITED STATES DISTRICT COURT           FOR ONLINE PUBLICATION ONLY
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
ABDELBASET A. YOUSSEF,                 :
                                       :
                        Plaintiff,     :   MEMORANDUM
                                       :   AND ORDER
        -against-                      :
                                       :   04 CV 3389
JAMAICA HOSPITAL MEDICAL CENTER,       :
                                       :
                        Defendant.     :
---------------------------------------------------------------X
```

A P P E A R A N C E S:

    ABDELBASET A. YOUSSEF
        388 Inkster Road
        Inkster, MI 48141
        Plaintiff, *pro se*

    WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
        150 East 42nd Street
        New York, NY 10017
    By:    Celena R. Mayo
        Attorneys for Defendant

JOHN GLEESON, United States District Judge:

        This is my second memorandum and order in Abdelbaset A. Youssef's action under the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 *et seq.* (2000), ("the ADA") against Jamaica Hospital Medical Center ("the Hospital"). Youssef claims the Hospital discriminated against him on account of a perceived disability while he was a resident there. I assume familiarity with my previous decision, filed April 18, 2005, which narrowed the case to a single issue: whether the Hospital discriminatorily denied Youssef Mortality and Morbidity ("M&M") training during his third year as a resident. Youssef has moved for summary

judgment on this issue,[1] and the Hospital has brought a cross-motion. I conclude that even on Youssef's version of the facts, he cannot establish a prima facie case of discrimination under the ADA. Accordingly, I grant the Hospital's motion for summary judgment and deny Youssef's motion.[2]

BACKGROUND

I assume familiarity with Youssef's version of the basic facts of his action, which I outlined in my previous memorandum and order. That outline will serve as background for the following facts taken from the record before me, construed with all inferences and disputes resolved in favor of the plaintiff.

On September 2, 2002, Youssef went to the office of the program director to ask for sick leave to undergo a medical procedure for his heart condition. While Youssef was there, he discovered that the posted schedule for M&M training had every resident in his program assigned to a four-week round except him. M&M training is a four-week training course in which residents are paired with attending physicians to investigate patient deaths in the past four-week period. The pairs then present the results of one or two cases at a one-hour

---

[1] Many of the arguments in Youssef's motion papers go to claims that I have already dismissed or issues not relevant to whether the Hospital is liable for depriving Youssef of M&M training. To the extent possible I will honor Youssef's request that I construe these arguments as bearing on the issue before me. *See* Mem. of Law in Supp. of Pl. Rule 56 Mot. for Summ. J. ("Pl.'s Br.") at 1. However, some of the arguments are irredeemably about damages, *see id.* ¶¶ 11-13, 20, other remedies, *see id.* ¶¶ 16, 21, or time-barred claims, none of which are before me. On the latter topic, Youssef attempts to resurrect his claims regarding the Hospital's "false evaluations" on the grounds that the Hospital sent those evaluations to him for his signature on September 24, 2002. *See, e.g.*, *id.* ¶ 17; *see also* ¶ 18 (claiming that an evaluation stating Youssef was "not valid to stay in the program" sprang from the discriminatory animus of "28 Attendings" and "the Chairman of the program"). As I explained in my previous memorandum and order, Youssef may not import time-barred allegations of discriminatory acts into the 300-day period by relating them to acts within that period. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). Accordingly, I do not address Youssef's claims about the "false evaluations."

[2] I therefore do not discuss the other arguments advanced by the Hospital in support of its motion.

2

conference. As a result of the Hospital's omission, Youssef was able to attend the conferences, but could not participate in the training or in the conference presentations.

Youssef alleges that the Hospital omitted him from the schedule in "retaliation for my refusal to resign . . . ." Pl.'s Opp'n and Reply ¶ 10. In July 2000, the Chairman of the Department of Medicine had advised Youssef, in light of his heart condition, to look for a less stressful job. When Youssef had declined, the Chairman had stated the Hospital would "have to take you for this year and we will see."

Youssef did not object to the omission from the M&M training schedule, or request to be included in the training, because his priority was simply to graduate successfully without provoking further discriminatory action against him. Nevertheless, he alleges that the consequences of the omission are severe. Without M&M training "no physician can work as [an] attending physician in a Hospital, or seek higher training." *Id.* ¶ 11.

Despite the deprivation, Youssef graduated from the program and now has medical privileges at two Oakwood Healthcare Systems-affiliated hospitals. He also received certification from the American Board of Internal Medicine. He works in private practice making a yearly salary of $80,000, which he alleges is half the average hospital-job salary and less than a third of a specialist's salary. Despite applying to internist positions at ten physician-employment agencies, Youssef received no offers. Youssef claims his inability to acquire the jobs yielding those higher salaries is due to his lack of M&M training.

The Hospital suggests it never has received inquiries specifically about the lack of Youssef's M&M training and Youssef can point to no such inquiries. Nevertheless, Youssef claims the Hospital has received many requests for his information from prospective hospital

employers: "Whenever I apply for a job or a training the company would send confidential request about my training history and it will be illegal for Jamaica Hospital to hide this shameful record." Pl.'s Br. ¶ 19. Youssef suggests that the Hospital illegally hides the M&M training information from prospective employers (and, presumably, the Court) out of a fear that the employer would litigate the matter. *See id.* In the alternative, Youssef claims the Hospital hands over the information but then destroys the correspondence at the request of the prospective employers. *See* Pl.'s Opp'n and Reply ¶ 14A. Youssef also claims the Hospital may have simply lost the information. *See id.* ¶ 14C.

## DISCUSSION

A moving party may obtain summary judgment if the record demonstrates no genuine issue of material fact such that the party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "[T]he inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotation marks and citation omitted). Casting merely "metaphysical doubt" upon the evidence produced by the moving party will not defeat a motion for summary judgment, however -- the factual dispute must be genuine. *Matsushita*, 475 U.S. at 586.

The Second Circuit applies the burden-shifting scheme of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to disability-discrimination claims pursuant to the ADA. *Heyman v. Queens Vill. Comm. for Mental Health*, 198 F.3d 68, 72 (2d Cir. 1999). "*McDonnell Douglas* and subsequent decisions have 'established an allocation of the burden of production and an order for the presentation of proof in . . . discriminatory-treatment cases.'" *Reeves v.*

4

*Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993)). A prima facie case for a discrimination claim under the ADA requires, *inter alia*, the plaintiff to produce evidence that he suffered an adverse employment action because of his disability. *See Heyman*, 198 F.3d at 72. For claims of employment discrimination against members of a protected class, an adverse employment action is one that causes the aggrieved employee to suffer a materially adverse change in employment status or in the terms and conditions of employment. *See Kessler v. Westchester County Dep't of Soc. Servs.*, 461 F.3d 199, 207 (2d Cir. 2006) (discussing the "adverse employment action" standard for discrimination claims pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* (2000), and the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 *et seq.* (2000)).

The Hospital argues that Youssef has not made out a prima facie case on his discrimination claim, in part because he lacks evidence that the alleged discrimination on the part of the Hospital resulted in an adverse employment action against him. Specifically, it claims that Youssef has failed to adduce evidence from which a jury could infer that the Hospital's alleged failure to include him in M&M training caused a materially adverse change in the terms and conditions of Youssef's employment.

Youssef's adverse employment action argument reduces to two claims: (1) the deprivation of M&M training caused him to take a lower salary than he would have otherwise, and (2) the deprivation of training caused him to lose opportunities for employment in hospitals and for more advanced training. A decreased post-residency salary and lost job opportunities are

5

likely materially adverse harms to a medical resident.[3] Accordingly, the *harm* Youssef alleges would likely make the Hospital's deprivation of M&M training an adverse employment action, had Youssef satisfied his burden of producing evidence about the *cause* of the harm. But Youssef produces no admissible evidence that the deprivation of M&M training caused the harms he complains of.

On the first claim, I assume Youssef is correct that physicians in private practice receive only half the salary a hospital job would pay and a third the salary of a specialist. I will also assume Youssef is correct that *without* M&M training no doctor can work as an attending physician in a hospital or receive higher training. But Youssef requires something besides his own bare statements that *with* the Hospital's M&M training he would have been accepted as an attending physician. Youssef has advanced no admissible evidence supporting that inference.

Youssef also claims his lack of M&M training has denied him opportunities as an internist or trainee. But again, he provides no evidence for the causal link that supports his claim. Indeed, Youssef himself entertains the theory that his potential employers were not even on notice about his lack of M&M training, *i.e.*, he claims it is possible that the Hospital either concealed or lost the information. But even assuming Youssef's alternative theory is true -- that the Hospital provides the information but then conceals the correspondence -- the record is utterly devoid of evidence that his lack of training is responsible for the employers' lack of interest. Indeed, Youssef's repeated reminders that he endured negative evaluations during his

---

[3] Medical residents are both employees and students training for employment as doctors. *See* Def.'s Local R. 56.1 Statement ¶ 2 (noting that the Hospital's "Residency Training Program is a hybrid post graduate educational/employment program for medical students"). Accordingly, material damage wrought upon Youssef's employability -- such as the loss in potential salary and job opportunities alleged here -- was also material damage to his employment status as a resident.

tenure at the Hospital help demonstrate that even if the lack of M&M training was disclosed to his prospective employers, it is scarcely plausible that it had anything to do with disqualifying Youssef from those jobs.

To be sure, counterfactual evidence is often, perhaps mostly, circumstantial. But Youssef had plenty of opportunity during discovery to obtain *some* evidence on this issue to put before the Court: statistics on the qualifications of internists, for example, or expert testimony on the relative importance of M&M training for newly graduated residents, or even a sampling of his rejection letters. His own suppositions about what motivated potential employers, no matter how frequently Youssef repeats them, are no substitute for admissible evidence supporting his claim that M&M training would have resulted in him obtaining a higher salary or additional employment opportunities. Accordingly, Youssef's ADA claim fails because he has produced insufficient evidence to support his allegation of discrimination.

## CONCLUSION

For the reasons articulated above, the defendant's cross-motion for summary judgment is granted, and the plaintiff's motion is denied.

So ordered.


John Gleeson, U.S.D.J.


Dated: Brooklyn, New York
November 5, 2006